IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

|  |  |  |
|---|---|---|
| JOHN B., *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 3-98-0168 |
| M.D. GOETZ, JR., Commissioner, | ) | |
| Tennessee Department of Finance and | ) | Judge Haynes |
| Administration, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL DISCOVERY**

Pursuant to Federal Rule of Civil Procedure 37, and Local Rule 37.1, Defendants move this Court for an order compelling Plaintiffs to respond to the discovery propounded on them by Defendants on April 6, 2006, as required by Federal Rules of Civil Procedure 33 and 34. Plaintiffs have refused to answer an interrogatory and request for documents that seek the basis, and information that supports and/or refutes the claimed basis, for Plaintiffs' contentions that Defendants are in violation of the Consent Decree. In support of the Motion to Compel Discovery, Defendants file this Memorandum, which demonstrates that Plaintiffs lack a good faith or legal basis for withholding from production the information and documents sought by Defendants.

I.  **BACKGROUND**

Consistent with the Court's instruction that the parties could immediately begin engaging in written discovery, *see* Feb. 14, 2006 Order (Doc. 601), on April 6, 2006, Defendants served on Plaintiffs a set of Interrogatories and Requests for Production. Responses to these discovery

requests were originally due on May 9, 2006. Shortly before Plaintiffs' responses were due, counsel for Plaintiffs informed counsel for Defendants that additional time would be needed to fully respond to the discovery requests. Defendants ultimately agreed to two extensions of time, making responses to Defendants' discovery requests due on May 30, 2006. On this date, Plaintiffs served on Defendants responses to the Interrogatories and Requests for Production and a Document Production Index (attached hereto as Exhibit A) and a Privilege Log (attached hereto as Exhibit B).

Although Defendants' Motion to Compel is directed at both Plaintiffs' response to Interrogatory No. 2 and Request for Production No. 1, there is only one overarching issue in dispute. Defendants have sought information and documents regarding Plaintiffs' communications with advocacy groups or public entities that relate in any way to Plaintiffs' contention that the State is not complying with the Consent Decree. Plaintiffs have refused to provide that information and have refused in part to provide responsive documents related to such communications. Plaintiffs have asserted relevancy, work product and First Amendment grounds as the basis for their refusal. In addition to failing to respond to Interrogatory No. 2, Plaintiffs provided Defendants with a privilege log in which 221 documents are listed that represent communications to and from advocates and public entities and Plaintiffs' counsel with the alleged basis of privilege being "work product" or the objections stated in response to Interrogatory No. 2. As the discussion below demonstrates, none of Plaintiffs' cited grounds for withholding the discovery due Defendants have merit.

II.   **UNANSWERED OR INADEQUATELY ANSWERED INTERROGATORIES AND REQUESTS FOR PRODUCTION**

In accordance with Local Rule 37.1(b)(2), the specific interrogatory and request for production at issue and the Plaintiffs' response to that interrogatory and request for production

are quoted verbatim in pertinent part below immediately followed by a discussion of the reasons supporting this motion to compel.

**Interrogatory 2:**

Please identify any and all Communications and/or Documents that you have exchanged with, provided to, or obtained from other advocates, advocacy groups or public entities since January 2004 that reflect, refer, or relate to any contention or concern that Defendants and/or the State were not, are not, will not, or would not be complying with the Consent Decree in this case, further identifying and describing the circumstances of and parties to the exchange.

**Plaintiffs' Response:**

The Plaintiffs object to providing any information or documents protected under the Court's Order of April 3, 2003 (Doc. No. 270) relating to *ex parte* communications between the parties' counsel and the Office of Special Master.

Insofar as the Interrogatory seeks disclosure of the identities of advocates, advocacy groups or public entities with whom the Plaintiffs have communicated regarding their claims and concerns in this case, they are outside the permissible scope of discovery under Rule 26, F.R.C.P. The identities of these other advocates and public entities are not relevant to the claim or defense of any party and are not reasonably calculated to lead to the discovery of admissible evidence. The Interrogatory adds nothing to the ability of the Defendants, through the other Interrogatories and corresponding Requests for Production which they have propounded, to learn the identity of persons having knowledge of discoverable matters.

In the alternative, even if the identification of these individuals, groups or entities could arguably lead to the identity of persons having knowledge of a discoverable matter, the marginal value of such information is outweighed by substantial First Amendment principles. The disclosure to the State of the identities of other advocates and advocacy groups with whom the Plaintiffs have communicated in confidence could cause the threatened or actual loss of funding to these other advocates or advocacy groups. In the case of both advocates and public entities, the forced disclosure of their identities could subject them to the threat or the reality of public recrimination. Their fears of such detriments resulting from the forced disclosure of their identities would deter individuals, groups and entities from associating or communicating in the future with Plaintiffs' counsel and would thus seriously impair counsel's ability to represent the children in the plaintiff class. The fears attendant to forced disclosure would thus compromise the ability of the Plaintiffs to effectively petition this Court or members of other branches of the state and federal governments for redress of the Plaintiffs' grievances. Forced disclosure therefore entails the likelihood of a substantial restraint on the Plaintiffs' rights to freedom of association and to petition for redress of grievances. *NAACP v. Alabama,* 357 U.S. 440, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

Subject to the foregoing objections and without waiving same, the Plaintiffs answer as follows:

Please see the Response to Request for Production of Documents corresponding to this interrogatory.

**Request for Production 1:**

Please produce or make available for inspection and copying all Documents and other materials identified in response to Interrogatories 1-17.

**Plaintiffs' Response:**

1. Plaintiffs object to this Request for Production on any and all grounds on which they have objected to the Interrogatories to which the Request refers.

2. The Plaintiffs object to the Interrogatories, and the definitions of terms and instructions therein, on the grounds and to the extent that they purport to impose obligations on the Plaintiffs beyond those imposed by the Federal Rules of Civil Procedure and Local Rules of the United States District Court for the Middle District of Tennessee. The Plaintiffs therefore assert the same objection with regard to this Request for Production of documents identified in response to the Interrogatories. The Plaintiffs specifically object to the Defendants' instructions with respect to documents as to which the Plaintiffs assert privilege, on the grounds that those instructions exceed the bounds of Rules 26 and 34, F.R.C.P.

3. Plaintiffs object to each and every paragraph of the Interrogatories that calls for information that is privileged or otherwise exempt from discovery in accordance with applicable law, including, without limitation, documents and information within the scope of the attorney client privilege and work product doctrine. The Plaintiffs therefore assert the same objection with regard to this Request for Production of documents identified in response to the Interrogatories. Plaintiffs object to the Interrogatories on the grounds and to the extent that they call for disclosure of information prepared in anticipation of litigation and/or trial preparation material without the showing required by the Federal Rules of Civil Procedure. The Plaintiffs therefore assert the same objection with regard to this Request for Production of documents identified in response to the Interrogatories. Plaintiffs hereby claim all privileges and protections applicable to the extent implicated by this Request for Production, and exclude privileged and protected information from its responses to the Request. Any disclosure of such privileged or protected information would be inadvertent, and is not intended to waive such privileges and protections.

. . .

7. Plaintiffs object to the Request for Production on the grounds and to the extent that it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence and to the extent that it is not relevant to the subject matter involved in the pending action.

. . .

10. In addition to the foregoing, Plaintiffs also object for reasons stated below to the Defendants' Request for Production of "any and all Communications and/or Documents [identified in response to Interrogatory 2] that you have exchanged with, provided to, or obtained from other advocates, advocacy groups or public entities since January 2004 that reflect, refer, or relate to any contention or concern [of noncompliance with the Consent Decree]": [same objections as noted above in response to Interrogatory No. 2].

Subject to these objections and without waiving same, the Plaintiffs answer as follows.

The plaintiffs are providing the defendants copies of those documents which are not covered by their objections, and which are not already in the defendants' possession and readily available to them. The plaintiffs are providing some documents already in the State's possession, such as a complete set of the parties' correspondence relating to this litigation since 2001, on the assumption that, while the defendants already have such documents, they may not be readily accessible.

Attached to this response as Appendix A is an index of all documents being produced. The index correlates each document to the Interrogatory to which it corresponds.

Attached to this response as Appendix B is a privilege log that lists other documents that are responsive but as to which the plaintiffs claim the privileges or protections described in the log. In addition to the documents listed individually in the log, the Plaintiffs assert privilege as to the following categories of documents:

A. Attorney-client privilege:

1. Communications exclusively between Plaintiffs' counsel and any member of the plaintiff class or that person's guardian or person acting *in loco parentis*.
2. Notes or memoranda recording information provided to Plaintiffs' counsel by members of the plaintiff class, or persons acting *in loco parentis*, and not divulged to third persons other than other attorneys for the same clients or for parties with a common interest.

B. Work product doctrine:

1. Memoranda, notes, intra-office e-mails or other communications exclusively within the office of Plaintiffs' counsel.
2. Communications exclusively with co-counsel or counsel representing clients with a common interest.
3. Drafts of the Plaintiffs' correspondence, pleadings, or community education material.

C. Any information or documents protected under the Court's Order of April 3, 2003 (Doc. No. 270) relating to *ex parte* communications between the parties' counsel and the Office of Special Master.

### A. The Information and Documents Requested Are Relevant to the Pending Litigation and Are Designed to Lead to the Discovery of Admissible Evidence

Plaintiffs' first objection to providing the information and documents requested by Defendants in Interrogatory 2 and Request for Production 1, to wit that information and documents regarding Plaintiffs' communications related to Plaintiffs' contentions of the State's non-compliance with Consent Decree are not relevant to this case, is without merit as demonstrated by Plaintiffs' own reliance on a subset of such communications and documents as support for their position in this litigation. Specifically, in response to Defendants' Interrogatory No. 4, which asked Plaintiffs to identify any contentions they make to the effect that the State is not complying with the Consent Decree and to identify any possible exhibits and witnesses, Plaintiffs included in their response the names of several advocates (e.g., Louise Morris and Tony Garr from the Tennessee Health Care Campaign, Charlotte Bryson of Tennessee Voices for Children, Dara Howe of Family Voices of Tennessee, etc.) and cite several documents clearly based on communications with advocates such as the Children's Defense Fund. *See* Exhibit A at 1-2. Plaintiffs' privilege log further illustrates that Plaintiffs have relied on communications and advice from outside advocacy groups in formulating their public positions and communications regarding the subject matter of this case. This privilege log, which contains approximately 221 documents reflecting communications to and from advocates and Plaintiffs' counsel, identifies communications regarding such things as "talking points," "medical necessity definition and EPSDT," "advocacy plan" and "EPSDT and state plan amendment." *See* Exhibit B.

Plaintiffs cannot simultaneously rely on outside advocacy groups to provide evidence in support of their position that the State is not complying with the Decree while arguing that their communications with advocates and public entities is not relevant to the claim or defense of any party. While Defendants would be willing to drop this issue if Plaintiffs would stipulate that

- 6 -
Case 3:98-cv-00168 Document 707 Filed 10/13/06 Page 6 of 17 PageID #: 2563

they will not rely on or submit any evidence obtained from outside advocacy groups or public entities and will not call any advocates as witnesses in the upcoming trial, if Plaintiffs are going to rely on evidence from advocates and employ such advocates as witnesses, it is entirely inappropriate for them to pick and choose among the advocates and public entities with whom they have communicated regarding the State's compliance when identifying those communications and providing documents.

Even if Plaintiffs were not themselves explicitly relying on communications with advocacy groups and had not identified a subset of advocates as being individuals with knowledge, the information being requested by Defendants would still be highly relevant to this litigation as the excerpts from Plaintiffs' privilege log cited above demonstrate. Under Fed. R. Civ. P. 26(b)(1), discovery may be had "regarding any matter, not privileged, that is relevant to the claim or defense of any party…Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." While Plaintiffs contend that their responses to Defendants' other interrogatories provide information on the basis for Plaintiffs' claim of noncompliance and that "the only additional information sought by Interrogatory 2 . . . is the identities of those advocates and public officials with whom Plaintiffs' counsel have communicated," this contention is false. *See* Letter from M. Johnson to N. Moss dated June 30, 2006 at 1. (Attached hereto as Exhibit C). While certainly the identity of advocates and public officials with whom Plaintiffs' counsel have communicated is relevant to contacting these individuals and identifying potential witnesses, it is the substance of these communications, the documents exchanged, and the circumstances behind the communications that the Defendants are seeking to discover. Such information is necessary to, among other things, permit Defendants to investigate whether any evidence exists that refutes Plaintiffs' claim
- 7 -

of noncompliance and whether Plaintiffs or any of these advocates have taken positions contrary to those now being advanced by Plaintiffs.

Plaintiffs' further contention that if any of these advocates had knowledge of discoverable matters Plaintiffs would have already identified them, *see* Exhibit C at 1, is likewise without merit. Defendants have the right to make their own determination of which communications are relevant and important and should not have to just trust Plaintiffs in this regard. Moreover, the brief descriptions of these communications contained in Plaintiffs' privilege log belies Plaintiffs' claim. Clearly communications regarding EPSDT, the medical necessity definition, TennCare reform effects on children, and mental health services for children, all of which are referenced in the privilege log, are potentially relevant or could lead to the discovery of relevant information. In short, Plaintiffs' objection to withholding this information on relevancy grounds simply does not withstand scrutiny.

> **B.  Plaintiffs Have Not Met Their Burden of Proving All Documents Withheld Were Prepared in Anticipation of Litigation and Further By Communicating with Third-Parties Plaintiffs Have Waived Whatever Work Product Protection They Might Have Had**

Plaintiffs' secondary objection to providing the information and documents requested in Interrogatory No. 2 and Request for Production No. 1 is that these communications and documents are work product and thus protected from disclosure. Plaintiffs have the burden of proving that the requested documents are in fact work product in that *all* withheld documents were prepared in anticipation of litigation. *See United States v. Roxworthy*, 457 F.3d 590 (6th Cir. 2006) ("A party asserting the work product privilege bears the burden of establishing that the documents he or she seeks to protect were prepared 'in anticipation of litigation.'") *citing In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473 (6th Cir. 2006). A cursory review of Plaintiffs' privilege log demonstrates that Plaintiffs cannot meet this burden. Withheld

documents include "press releases," "report on children's health in TN," "comments on waiver proposal and EPSDT," and "national level advocacy" and "talking points." In short, unless all of the documents were created "because of" anticipated litigation, as opposed to some other purpose such as pursing Plaintiff counsel's general advocacy work or public relations campaign, the documents are not entitled to work product protection. *Id.*

As importantly, even if Plaintiffs could have claimed work product protection for these documents, whatever claim to work product protection the Plaintiffs might have had was clearly waived when they voluntarily chose to share these documents with third-parties to this litigation. The Sixth Circuit has unambiguously rejected the selective waiver doctrine, holding that "the standard for waiving the work-product doctrine should be no more stringent than the standard for waiving the attorney-client privilege - once the privilege is waived, waiver is complete and final." *In re Columbia/HCA Healthcare Corp. Billing Prac. Litig.*, 293 F.3d 289, 307 (6th Cir. 2002) (internal quotes and citations omitted).

While Plaintiffs argue that in this case the documents were shared "with other groups and individuals that advocate for the rights of TennCare or Medicaid beneficiaries," *see* Exhibit C at 2, and thus are protected from disclosure under the common-interest privilege, this is nothing more than an artfully disguised attempt to extend the selective waiver argument already rejected by the Sixth Circuit into another context and to impermissibly expand the scope of the common-interest privilege. No other parties share a legal interest in the outcome of this litigation and there are no other parties to this litigation and no other suits against the State regarding TennCare or EPSDT but this suit. Thus, even though Plaintiffs have failed to identify any of the advocates or public entities with whom they have communicated, it is clear that none of these entities fall within the scope of the common-interest or joint-defense doctrine. As the Tenth Circuit in

- 9 -
Case 3:98-cv-00168 Document 707 Filed 10/13/06 Page 9 of 17 PageID #: 2566

*Grand Jury Proceedings v .United States*, 156 F.3d 1038, 1042-43 (10th Cir. 1998) noted, establishing a joint-defense privilege requires showing "(1) the documents were made in the course of a joint-defense effort; and (2) the documents were designed to further that effort"). There is no joint-defense effort here as there are no other parties to this suit; thus there is no joint-defense privilege.

     Legally it is simply not enough for Plaintiffs to merely share a common-interest in Medicaid or children's health care with the advocates with whom they have communicated for those communications to be subject to the common-interest privilege protection. Plaintiffs and these advocates must have an "identical (or nearly identical) *legal* interest" in the litigation. *United States v. Doe,* 429 F.3d 450, 453 (3rd Cir. 2005) (emphasis added). Merely "sharing a desire to succeed in an action does not create a 'common interest.'" *Shamis v. Ambassador Factors Corp.*, 34 F.Supp.2d 879, 893 (S.D.N.Y. 1999). The weight of authority clearly suggests that the "common interest" rule can only apply where parties who are represented by separate counsel engage in a common legal enterprise. *See id.* Plaintiffs cannot make that showing because there is no common legal enterprise. Notably if Plaintiffs were correct regarding the scope of the common-interest privilege, the State should not have to produce any of the multitude of documents shared among different agencies even when legal counsel was not involved since all of these documents were created and shared in furtherance of the common interest in complying with the Consent Decree and in anticipation of litigation regarding the State's compliance with the Decree.

     Finally even if Plaintiffs could establish a common-interest privilege as to some set of unknown persons, Plaintiffs would still have to prove that common-interest privilege attaches to *all* communications with *all* advocates with whom they have shared information because as

noted above, the Sixth Circuit has rejected the selective waiver doctrine. The Sixth Circuit has made clear that the voluntary disclosure of purportedly privileged material is inconsistent with the assertion of the privilege. *See In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996) ("Once the privacy for the sake of which the privilege was created [is] gone by the [client's] own consent . . . the privilege does not remain in such circumstances for the mere sake of giving the client an additional weapon to use or not at his choice."); *see also In re Columbia*, 293 F.3d 289 at 302. Thus, once Plaintiffs chose to waive their work product protection and common-interest privilege as to some of their communications with advocates, the privilege was waived with respect to all communications concerning the same subject matter – *i.e.* all communications regarding the State's compliance with the Consent Decree. *Grand Jury Proceedings*, 78 F.3d at 255; *Static Control Components, Inc. v. Lexmark Int'l*, 2006 U.S. Dist. LEXIS 40612 at *20.

### C. First Amendment Principles Do Not Support Allowing Plaintiffs To Ignore Their Discovery Obligations

For their final objection to producing the requested documents and information, Plaintiffs inappropriately rely on the First Amendment as a basis for failing to fulfill their discovery obligations. As noted above, the information sought – *i.e.* the identification and description of the circumstances of and parties to the exchange of information regarding Plaintiffs' contentions of non-compliance and all supporting documentation – is highly relevant to this case. Defendants' requests do not infringe on or in any way implicate the Plaintiffs' First Amendment rights. Further, even assuming, arguendo, that Plaintiffs are correct that First Amendment principles could provide a reason for withholding this information, the Defendants' compelling need for this highly relevant information outweighs the Plaintiffs' interest.

In support of their claim that they can withhold relevant and discoverable information,

Plaintiffs cite *NAACP v. Alabama*, 357 U.S. 449 (1958). Plaintiffs' reliance on *NAACP* is misplaced. In that case, the State of Alabama sought a restraining order against the NAACP to prevent it from conducting activities within the state under an Alabama statute requiring foreign corporations to qualify before doing business in the State. *Id*. at 452. In prosecuting the suit, the State sought the organization's complete membership list as part of a document production, even though the NAACP's membership had little to no bearing on the underlying substance of the case. 357 U.S. at 464. The Supreme Court held that the trial court's order to produce the NAACP's membership list "entail[ed] the likelihood of a substantial restraint upon the exercise by petitioner's members of their right to freedom of association." *Id.* at 462. In reaching this conclusion, the Court relied on the NAACP's "uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." *Id.* Based on those factors, the Court determined "that compelled disclosure of petitioner's Alabama membership is likely to affect adversely the ability of petitioner and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate, in that it may induce members to withdraw from the Association and dissuade others from joining it because of fear of exposure of their beliefs shown through their associations and of the consequences of this exposure." *Id*. at 462-463.

*NAACP* is inapposite for three reasons. First, this is not a First Amendment issue and does not implicate the protections in *NAACP*. Plaintiffs' argument that the First Amendment somehow protects them from answering legitimate discovery requests in a suit they originally brought and are currently pressing is untenable. As explained above, the information Defendants seek directly relates to Plaintiffs' contentions that the Defendants have not complied with the

Consent Decree. Plaintiffs' discussions with other advocacy groups and documents received from such groups are at the heart of Plaintiffs' contentions that Defendants have violated the Consent Decree. Contrary to the situation in *NAACP* where the NAACP was an unwilling participant in a case being brought by the State of Alabama and the State was using its lawsuit to harass and gain information about the NAACP's members, here it is the Defendants who are the unwilling or reluctant participants in the current litigation. It is Plaintiffs who have pressed the claim that Defendants have violated the Consent Decree and that Defendants' current plan for complying with their Decree and EPSDT obligations is inadequate. Further, as Plaintiffs have admitted that they are relying upon information obtained from other advocacy groups to support their claim that Defendants are not in compliance with the Consent Decree, it can hardly be said that Defendants are seeking tangential information in order to suppress Plaintiffs' First Amendment rights of association as was the case in *NAACP*. *See supra* at 5.

Second, contrary to the facts in *NAACP*, Defendants are not seeking any organizations' membership lists. Rather, Defendants seek the identity of the independent advocacy groups with which the Plaintiffs have communicated regarding Defendants' compliance with the Consent Decree and the information and documents underlying the communications with those groups. Defendants have not asked for and are not interested in any membership lists. Therefore, the chilling effect on organizational membership with which the *NAACP* Court was concerned is not a factor.

Third, Plaintiffs have not made the particularized showing of harm required by *NAACP* and its progeny. Mere speculation and unsubstantiated claims that harm will befall them or the advocacy groups if their identities are disclosed are not sufficient. In analyzing whether the First Amendment protection outlined in *NAACP* applies, courts have required the subject of the

subpoena or request to "make a prima facie showing of a first amendment infringement -- typically, that enforcement of the disclosure requirement will result in harassment of current members, a decline in new members, or other chilling of associational rights. Once such a showing is made, the burden then shifts to the government to show both a compelling need for the material sought and that there is no significantly less restrictive alternative for obtaining the information." *United States v. Comley*, 890 F.2d 539, 544 (1st Cir. 1989); *see also Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988).

Here, Plaintiffs have not made the necessary prima facie showing that enforcement will result in harassment. Plaintiffs only make generalized allegations of loss of funding, "the threat or reality of public recrimination" and that "fears of such detriments would deter groups from associating or communicating with Plaintiffs' counsel." *See* Plaintiffs' Responses to Interrogatory 2 and Request for Production 1. Plaintiffs' speculation falls far "short of the solid, uncontroverted evidence of actual harassment that has existed in those cases where the Supreme Court has found violations of the right to freedom of association." *Comley*, 890 F.2d at 544. Significantly, Plaintiffs do not, and cannot, provide evidence that they or the advocacy groups in question will be harassed or threatened by the Defendants. In addition, Plaintiffs' allegations that advocacy groups may withdraw from working with them "is too remote and speculative" to warrant invocation of *NAACP*. *Sherman Williams Co. v. National Paint and Coatings Ass'n, Inc.,* 2005 U.S. Dist. LEXIS 18700 (N.D.N.Y. 2005). As the court found in *Sherman Williams*, and as aptly applies here, "Plaintiffs' concerns pale in comparison to the real threats of bodily harm and intimidation confronted by the NAACP and its members in 1958." *Id.*

Even if Plaintiffs had made a prima facie showing, Defendants' compelling need for the information sought would outweigh the Plaintiffs' interest. As discussed above, Plaintiffs admit

in response to Interrogatory No. 4 that advocacy groups with which they have been working have information that supports Plaintiffs' contention that Defendants have violated the Consent Decree. The only means Defendants have to obtain this information is from the Plaintiffs, and this Court should reject Plaintiffs' attempt to invoke the First Amendment to conceal that information.

## III. CONCLUSION

For the reasons set forth in this Memorandum, this Court should grant the Defendants' Motion to Compel Discovery and order the Plaintiffs to respond to Defendants' Interrogatory Number 2 and the produce the corresponding documents sought in Defendants' Request for Production 1.

October 13, 2006                                    Respectfully submitted,

                                                    PAUL G. SUMMERS
                                                    Attorney General


                                                     s/ Linda A. Ross_____
                                                    LINDA A. ROSS  TN BPR #4161
                                                    Deputy Attorney General
                                                    Office of the Attorney General
                                                    P.O. Box 20207
                                                    Nashville, TN  37202
                                                    (615) 741-1771


                                                     s/ Charles J. Cooper_____
                                                    CHARLES J. COOPER
                                                    Michael W. Kirk
                                                    Nicole Jo Moss
                                                    COOPER & KIRK, PLLC
                                                    1500 K Street, N.W., Suite 200
                                                    Washington, D.C. 20005

   s/ Aubrey B. Harwell, Jr
AUBREY B. HARWELL, JR.
Ronald G. Harris
Philip D. Irwin
NEAL & HARWELL, PLC
2000 First Union Tower
150 Fourth Avenue, North
Nashville, TN  37219

## CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of the foregoing document has been served on the following by electronic mail on this 13th day of October, 2006.

                Michele Johnson
                Gordon Bonnyman
                Tennessee Justice Center
                301 Charlotte Avenue
                Nashville, TN  37201

                _s/ Charles J. Cooper_____