# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN B., *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:98-cv-0168 |
| | ) | |
| MARK EMKES, Commissioner, Tennessee | ) | Judge Thomas A. Wiseman, Jr. |
| Department of Finance and Administration, | ) | |
| *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OF PRELIMINARY FINDINGS

Again pending before this Court are some portions of Defendants' November 2006 motion to vacate the Consent Decree (Doc. No. 738). The Sixth Circuit recently reviewed the original denial of that motion and issued an opinion reversing that decision in part and vacating those portions of the March 10, 1998 Consent Decree (Doc. No. 12) based on 42 U.S.C. § 1396a(a)(30). *John B. v. Goetz*, 626 F.3d 356 (6th Cir. 2010).

In its opinion, the Sixth Circuit rejected Defendants' argument that the Medicaid statute as a whole does not confer individual rights enforceable under 42 U.S.C. § 1983 but, in addressing Defendants' more particularized arguments aimed at "the primary statutory provision on which the consent decree and plaintiffs' claims are based," reconfirmed that 42 U.S.C. § 1396a(a)(30) is not privately enforceable under § 1983. *John B.*, 626 F.3d at 362, 363. Consequently, the court vacated "the consent decree's requirement that defendants ensure that the availability of services is geographically comparable and any other provisions based on § 1396a(a)(30)," *id.* at 363, without specifying exactly which other provisions of the consent decree might be based on § 1396a(a)(30). Likewise, the court expressly held that the Adoption Assistance Act ("AAA"), 42 U.S.C. §§ 671(a)(16), 675(1), and 675(5), does not create rights that are privately enforceable under § 1983, but declined to "ascertain the extent to which the [consent] decree is based on provisions of the [AAA]," *John B.*, 626 F.3d at 363, leaving that issue to be resolved in the first instance by the district court.

The appellate court also reaffirmed its implicit holding in *Westside Mothers v. Olszewski*,454 F.3d 532, 542 (6th Cir. 2006) ("*Westside Mothers II*"), that 42 U.S.C. § 1396a(a)(43)(A) confers rights that are enforceable under § 1983, but declined to reach the question of the enforceability of the other subsections of 42 U.S.C. § 1396a(a)(43), namely subsections (B), (C), and (D). In that regard, the court stated instead:

> One open question is the extent to which *Westside Mothers II*'s holding that a state's obligation under §§ 1396a(a)(8) and (10) is only to pay for medical assistance may be applicable to the provisions of § 1396a(a)(43) not addressed in Westside Mothers II. The answer to this question could potentially impact the provisions of the consent decree that require actual provision of service rather than simply payment. Another issue relates to whether *Westside Mothers II*'s determination about waiting lists is applicable to the waiting list provision of § 1396a(a)(43)(C). Finally, *Westside Mothers II* only addresses one part of § 1396a(a)(43) and leaves unresolved the private enforceability of the remaining part. While we could undertake an analysis of each of these issues, we believe that they are best left to the district court in the first instance . . . .

*John B.*, 626 F.3d at 363.

The parties have now submitted their supplemental briefs addressing the enforceability of the remaining portions of § 1396a(a)(43) under § 1983, and arguing the question of what portions of the consent decree are effectively vacated by the Sixth Circuit's ruling or by any further ruling of this Court as to the private enforceability of § 1396a(a)(43). In their brief, Defendants concede the private enforceability of § 1396a(a)(43)(B) (hereafter "subsection (43)(B)"), but argue that, pursuant to the Sixth Circuit's holding in *Westside Mothers II*, that "there is no individual right [under subsection (43)(B)] to make the State itself ensure *provision* of such medical services (as opposed to *reimbursing* for them)." (Doc. No. 1428, at 18 (Defs.' Supp. Br. 14) (emphasis added).) With respect to 42 U.S.C. § 1396a(a)(43)(C) ("subsection (43)(C)"), Defendants argue that this statutory provision only requires the state to submit a plan for the arrangement of corrective treatment once such treatment as been identified as necessary, but that "the statute does not speak to the beneficiary; it simply does not say that the beneficiary has a *right* to treatment." (Doc. No. 1428, at 19.) Alternatively, Defendants concede that some courts have held that subsection (43)(C) is individually enforceable under § 1983 when the claim in question is brought by an individual who has been denied coverage for a specific treatment to address a specific medical condition, but they argue that where "the claims and the relief in question are systemwide and aggregate, a cause of action will not lie under Section 1983." (*Id.*) Defendants further contend that numerous provisions of the Consent Decree premised upon subsections (43)(B) and (C) must be

vacated, along with numerous other provisions that are implicated by, and must be vacated as a result of, the Sixth Circuit's conclusion that § 1396a(a)(30) and the AAA do not create enforceable rights. For their part, Plaintiffs concede that two subparagraphs of the Consent Decree are subject to being vacated as a result of the Sixth Circuit's decision, and that § 1396a(a)(43)(D) does not create privately enforceable rights. They deny that any of the remedies effected by the Consent Decree are implicated by subsection (43)(D), however, and argue that the remainder of the Consent Decree is intended to remedy violations of subsections (43)(B) and (C), which are privately enforceable.

As set forth below, the Court believes that subsections (43)(B) and (C) are privately enforceable, and that their application is unaffected by the Sixth Circuit's holding in *Westside Mothers II*. The Court further finds that several paragraphs of the Consent Decree should be vacated as a result of the 6th Circuit's decision, as identified below, but that the majority of the Consent Decree should remain in effect.

A.      Subsections (43)(B) and (C) Are Privately Enforceable.

Plaintiffs' claims are brought under 42 U.S.C. § 1983 against Defendants, Tennessee officials charged with implementing Tennessee's managed care program, TennCare, to enforce the early and periodic screening, diagnosis and treatment ("EPSDT") provisions of the Medicaid Act. The parties entered into a Consent Decree in March 1998 (Doc. No. 12) which imposes systemic remedies for these alleged violations. In their Rule 60(b) Motion to Vacate the Consent Decree and Dismiss the Case (Doc. No. 738), Defendants argue that the validity and enforceability of the Consent Decree are predicated on the presumption that individual subsections of the Medicaid Act are privately enforceable under § 1983. Section 1983, however, only authorizes a private right of action to the extent the specific provision of federal law sought to be enforced has "unambiguously conferred *rights*, as distinguished from mere benefits or interests." *Westside Mothers II*, 454 F.3d at 541–42 (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 282–83 (2002)) (emphasis added).

In inquiring whether an individually enforceable right exists, the Sixth Circuit looks to three factors: (1) whether Congress intended the provision to benefit the plaintiff; (2) whether the statute is so "'vague and amorphous' that its enforcement would strain judicial competence"; and (3) whether the provision imposes a binding obligation on the state, *i.e.*, it must be couched in mandatory, rather than precatory, terms. *Johnson v. City of Detroit*, 446 F.3d 614, 618–19 (6th Cir. 2006) (citing *Blessing v.*

*Freestone*, 520 U.S. 329, 340–41 (1997)).  With respect to the first *Blessing* factor, the Supreme Court in *Gonzaga* expressly "reject[ed] the notion that . . . anything short of an unambiguously conferred right [is sufficient] to support a cause of action brought under § 1983," and emphasized that "it is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that section." *Gonzaga*, 536 U.S. at 283) (emphasis in original).

Under these principles, it is clear that § 1396a(a)(43)(B) and (C) are privately enforceable under § 1983.  The statute itself states:

> A State plan for medical assistance must . . . provide for . . .
>
> (B) providing or arranging for the provision of such screening services in all cases where they are requested, [and]
>
> (C) arranging for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed by such child health screening services. . . .

42 U.S.C. § 1396a(a)(43)(B) & (C).[1]

Under Gonzaga, to satisfy the first Blessing factor, for a statute to "unambiguously" confer a right it must (1) contain rights-creating language that is unmistakably focused on the individuals benefitted; (2) have an individual focus, rather than a systemwide or aggregate focus; and (3) lack an enforcement scheme for aggrieved individuals.  *Gonzaga*, 536 U.S. at 284–86.  Sections 43(B), and (C) easily pass this test.  First, there is no dispute that these provisions satisfy the final *Gonzaga* factor, because they— like the rest of the Medicaid Act—have no independent enforcement mechanism.  *Harris v. Olszewski*, 442 F.3d 456, 462 (6th Cir. 2006).  The provisions also have rights-creating language that focuses on specific individuals.  *Gonzaga*, 536 U.S. at 282; *see also Harris*, 442 F.3d at 462 ("[B]y saying that '[a] State plan . . . must . . . provide' this free choice [among medical providers], the statute uses the kind of 'rights-creating,' 'mandatory language,' that the Supreme Court and our court have held establishes a private right of action."  (citations omitted)).  Subsection 43(A) conforms to this requirement by identifying

---

[1] The parties agree that subsection (D) is not privately enforceable.  It requires the State to submit annual reports statistical information relating to the provision of EPSDT services.  Subsection (A), which the Sixth Circuit has held is privately enforceable, states:

> A State plan for medical assistance must . . . provide for . . . informing all persons in the State who are under the age of 21 and who have been determined to be eligible for medical assistance including services described in section 1396d(a)(4)(B) of this title, of the availability of early and periodic screening, diagnostic, and treatment services as described in section 1396d(r) of this title and the need for age-appropriate immunizations against vaccine-preventable diseases. . . .

specific people—"all persons in the State who are under the age of 21 and who have been determined to be eligible for medical assistance"—and requiring that the State "provide for . . . informing [them] . . . of the availability of early and periodic screening, diagnostic, and treatment services." 42 U.S.C. § 1396a(43)(A). Similarly, subsection 43(B) refers to the same children identified in subsection 43(A), and requires the State to "provide for . . . providing or arranging for the provision of such screening services" to those children "in all cases where they are requested." Subsection 43(C) likewise requires the State to "provide for . . . arranging for . . . corrective treatment" for those children who receive screening services, if necessary. If, as the Sixth Circuit has already determined, subsection (A) meets the first *Gonzaga* criterion, (43)(B) and (C) necessarily must as well.

To meet the second *Gonzaga* factor, subsections (43)(B) and (C) must have "an individual focus, rather than a systemwide or aggregate focus." Again, just as subsection (43)(A) focuses on specific individuals—Medicaid-eligible children—and provides that they must receive specific information, subsections (43)(B) and (C) focus on a smaller subsets of the children who are identified as the focus of subsection (43)(A): Subsection (43)(B) focuses on children who request screening services and provides that such children must receive those services, while (43)(C) focuses on children whose screening under (43)(B) reveals the need for corrective treatment and requires that such children receive that treatment.

Nor do subsections 43(B) and (C) impose a "vague and amorphous" mandate upon the State, as referenced in the second *Blessing* factor. As the Sixth Circuit indicated in *Harris*, the relevant question is whether the "mandate itself" contains "the kind of vagueness that would push the limits of judicial enforcement." 442 F.3d at 456. In *Harris*, the court concluded that the mandate contained in 42 U.S.C. § 1396a(a)(23) that Medicaid plans give beneficiaries their choice of willing providers was not vague because whether a plan gave this choice or not "is likely to be readily apparent." *Harris*, 442 F.3d at 456. Subsection (43)(A) contains a similarly straightforward and ascertainable mandate—to provide information about screening services to all Medicaid-eligible children. Subsections (43)(B) and (C) contain equally clear mandates: that the state provide requested screening services to all Medicaid-eligible children who request them, and that it arrange for corrective treatment when necessary. Further, as Plaintiffs argue, it is all too "readily apparent" when a child who has requested screening services has not received them or when a child who needs corrective treatment goes without. Such explicit grants of

easily discernible rights, coupled with readily apparent violations, plainly satisfy the second *Blessing* factor. *Cf. Harris*, 442 F. 3d at 456; *see also Gean v. Hattaway*, 330 F.3d 758, 772–73 (6th Cir. 2003) (holding that § 1396a(a)(3) of the Medicaid Act—which requires a state to "grant[] an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness"—is privately enforceable because it "creates an obligation on the part of the State and is phrased in terms of benefitting Medicaid recipients").

Finally, subsections (43)(B) and (C) satisfy the third *Blessing* factor by unambiguously imposing a binding obligation on the State. These provisions require that the State "provid[e] or arrang[e] for the provision of" screening services, § 1396a(a)(43)(B)" and "arrang[e] for . . . corrective treatment." § 1396a(a)(43) (C). This language is mandatory, not precatory, and thus creates a binding obligation on States participating in Medicaid. *Harris*, 442 F.3d at 462.

As Plaintiffs point out, every court to have examined the issue since *Gonzaga* has likewise concluded that subsections (43)(B) and (C) confer privately enforceable rights. (*See* Doc. No. 1431, at 11 (collecting cases).) Defendants, in attempting to avoid this result, have tended to conflate the scope of the Consent Decree's provision of *remedies* for violations of the Medicaid Act with the scope of the rights conferred by the statutory provisions at issue. The Sixth Circuit has rejected that line of reasoning:

> To the extent that defendants' first argument for vacating the entire decree is based on an argument that the decree's systemic remedies are not privately enforceable, this reasoning does not correctly appreciate the distinction between rights and remedies. To determine whether a statute is enforceable under § 1983, courts examine "whether Congress intended to create a federal right," *Gonzaga*, 536 U.S. at 283, not the scope of the relief sought or granted. In other words, *remedies vindicating individual rights may be both systemic and nonsystemic; the form of relief says nothing about the nature of the right.*

John, 626 F.3d at 363 n.3 (emphasis added).

### B.      Subsections (43)(B) and (C) Require the States to Provide Services and Treatment

As noted above, the Sixth Circuit asked this Court to examine the scope of the rights created by subsections (43)(B) and (C), and specifically to consider whether the scope of those provisions was affected by its holding in *Westside Mothers II* that Sections 1396a(a)(8) and (10) require only payment for medical assistance." *John B.*, 626 F.3d at 363. Plaintiffs concede that the one paragraph of the Consent Decree that references waiting list (Consent Decree ¶ 61(iii)) must be vacated. Otherwise, this Court

concludes that *Westside Mother II*'s interpretation of Sections (a)(8) and (10) has no effect on the construction of Section (a)(43).

First, the holding in *Westside Mothers II*—that a state's obligations under § 1396a(a)(8) and (10) are limited to payment for services—turned entirely on the particular language of the statutory provisions at issue in that decision,[2] and specifically required the Sixth Circuit to construe the term "medical assistance" as it is defined by the Medicaid Act. The statutes in question here, however, expressly require the state either to provide or arrange for the provision of screening and treatment services. The Court finds that *Westside Mothers II* has no bearing on the construction of subsections (43)(B) and (C).

Even if that were not the case, the term "medical assistance," at the time *Westside Mothers II* was decided, was still defined by the Medicaid Act as "payment for part or all of the cost of the [enumerated] services" to eligible individuals "under the age of 21." 42 U.S.C. § 1396d(a). Congress has recently clarified that the term "medical assistance" means "payment of part of all of the costs of . . . care and services, or the care and services themselves, or both." 125 Stat. 119, at § 2304 (March 23, 2010) ("Patient Protection and Affordable Care Act" (amending Section 1905(A) of the Social Security Act as codified at 42 U.S.C. § 1396d(a)). Under this amendment, whether a particular provision of the Medicaid Act requires payment for services or the provision of the services themselves is not controlled by the old definition of "medical assistance" as referring only to financial assistance. Indeed, the legislative history behind this amendment clearly shows that Congress intended to clarify that where the Medicaid Act refers to provision of services, a participating State is required to provide (or ensure the provision of) services, not merely to pay for them:

> ["Medical assistance"] is expressly defined to refer to payment but has generally been understood to refer to both the funds provided to pay for care and services and to the care and services themselves. . . . Some recent court opinions have, however, questioned the longstanding practice of using the term "medical assistance" to refer to both the payment for services and the provision of the services themselves. These

---

[2] The referenced provisions require state Medicaid plans to:

(8) provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals; [and]

(10) provide . . . for making medical assistance available [to eligible individuals] . . . .

42 U.S.C. § 1396a(a)(8) & (10).

> opinions have read the term to refer only to payment; this reading makes some aspects of the rest of Title XIX difficult and, in at least one case, absurd. If the term meant only payments, the statutory requirement that medical assistance be furnished with reasonable promptness "to all eligible individuals" in a system in which virtually no beneficiaries receive direct payments from the state or federal governments would be nearly incomprehensible.

H.R. Rep. No. 299, 111th Cong., 1st Sess. 2009, at 645–50 (Oct. 14, 2009, also available at 2009 WL 3321420, at *694–*95.

The Sixth Circuit acknowledged in *John B.* that "[t]he definition of 'medical assistance' has changed" since *Westside Mothers II*, but stated that "the new definition does not affect" the holding of *Westside Mothers II* regarding the State's obligations under Sections (8) and (10) because "a state may still fulfill its Medicaid obligations by paying for services." *John B.*, 626 F.3d at 360 n.2. The Sixth Circuit was silent as to the effect of the definitional change on Section (43). This Court finds that where, as in § 1396a(a)(43)(B) and (C), the language of a provision clearly requires that the state "provide or arrange for the provision" of screening services and corrective treatment, that language cannot reasonably be construed to mean only payment for services, particularly in light of the amended definition of "medical assistance." Even if that were not the case, the holding in *Westside Mothers II* would affect only the scope of a state's obligations under subsections (43)(B) and (C)—it would not render them unenforceable through § 1983.

And, to be clear, these provisions do not require the State to become a "direct medical provider," as the State asserts. (Defs.' Supp. Brief, Doc. No. 1428, at 18.) Rather, these provisions require the State to ensure that Medicaid-eligible children receive "screening services" and "corrective treatment" under certain circumstances. To satisfy its obligations, the State may either provide services directly or hire others to do so.

C.    **Those Provisions of the Consent Decree Based on Subsections (43)(A), (B), and (C) Are Not Subject to Being Vacated.**

The next question that arises is this: What portions of the Consent Decree, if any, are subject to being vacated as a result of the Sixth Circuit's conclusion that 42 U.S.C. § 1396a(a)(30)(A) ("subsection (30)(A) and the Adoption Assistance Act ("AAA") do not create rights enforceable through § 1983, and the Plaintiffs' concession that subsection (43)(D) is likewise not privately enforceable?

In responding to that question, Defendants challenge essentially every paragraph of the Consent Decree from paragraph 41 through paragraph 93 on the basis that each is based on subsection (43)(D), subsection (30)(A), or on the AAA. In Plaintiffs' view, virtually every paragraph of the Consent Decree is premised upon subsection (43)(A), (B) or (C) and is therefore valid and enforceable, except that Plaintiffs concede that paragraphs 45 through 49 may be vacated as outdated and therefore moot, and that paragraph 61(iii) may be vacated as dependent for its authority on subsection (30)(A). The parties' positions and the Court's resolution of the dispute as to each of the other challenged paragraphs are set forth below.

**Paragraphs 41–44**

Paragraph 41 requires that the "TennCare rules and guidelines clearly describe, allocate responsibility for, and require compliance with, each specific screening requirement under federal law," which it then enumerates in detail. Paragraph 42 likewise requires that TennCare rules and regulations comply with federal law governing interperiodic screening. Defendants characterize paragraphs 41 and 42 as relating to "screening participation rates" and falling, as such, under the purview of subsection (43)(D), which is not individually enforceable. The Court agrees with Plaintiffs that these paragraphs are clearly intended to remedy and prevent violations of subsection (43)(B) and that they remain in full force and effect.

Paragraph 43 requires that the TennCare contractor networks be "adequate in terms of qualifications and training, as well as in numbers, to properly screen children in conformity" with federal law. Defendants characterize paragraph 43 as implicating subsection (30)(A) and the "network adequacy" requirement, while Plaintiffs again contend that the provision is meant to enforce and remedy subsection (43)(B) and its implementing regulation, 42 C.F.R. § 441.61(b). The Court finds that the provision itself is somewhat vague and that compliance would be difficult to prove. Essentially, Defendants' obligation in proving compliance with the Consent Order and subsection (43)(B) will be to show that it is effectively screening all children who request it, and the State contractors will necessarily have to have in effect adequate networks to ensure Defendants' compliance. The Court nonetheless finds that this paragraph of the Consent Decree to heavily reliant on subsection (30)(A) and too unwieldy on its own to monitor or enforce.

Paragraph 44 sets out the steps the State is to take to ensure that periodic screens effectively identify children who should be referred for further assessment of behavioral/developmental problems or possible hearing or vision impairment. Defendants characterize paragraph 44 as "enforcing the participation goal established by CMS pursuant to [subsection (43)(D)]. The Court finds that this paragraph refers to subsection (43)(B) and is intended to remedy past violations of that provision and prevent ongoing or future violations thereof. In that regard, and as a general matter with respect to Defendants' continued objection to various portions of the Consent Decree as systemic in scope, the Court again notes the critical distinction between *rights* conferred by the relevant statutory provisions, and the *remedies* provided for violations thereof. "*[R]emedies vindicating individual rights may be both systemic and nonsystemic; the form of relief says nothing about the nature of the right.*" *John B.*, 626 F.3d at 363 n.3 (emphasis added).

**Paragraphs 50–51**

Paragraphs 50 and 51 expressly incorporate the screening performance standards requiring that the State meet the 80% goal, and confirms that the Defendants will be presumed to be in compliance with their screening obligations under the law and the Consent Decree for any year in which the 80% goal is met. The Court believes that paragraph 50 in particular is premised upon subsection (43)(D) and must be vacated as the goals set forth therein are not individually enforceable. Paragraph 51 shall remain in effect, however, as indication of the parties' intent that the State's ability to meet the statutory goal (which remains in effect regardless of Plaintiffs' standing to enforce it) shall be evidence of the State's compliance with the Consent Decree.

**Paragraph 52**

Paragraph 52 requires the complete screening of 100% of TennCare children in the custody of the Department of Children's Services, and sets forth DCS's responsibilities with regard to developing a tracking system for reporting compliance with this provision. Defendants assert that this provision also relates to subsection (43)(D). Plaintiffs assert that this provision reflects the State's responsibility acting *in loco parentis* and as a Medicaid provider to ensure that all children in its custody receive EPSDT screens.

The Court agrees that Defendants, as a practical matter, have complete control over whether children in State custody request and receive screenings. The provision also reflects recognition of the fact that the State was not previously in compliance with its obligations under subsection (43)(B) and attempts to remedy that problem and as such is valid and enforceable.

**Paragraphs 53–57, 59, 60(i)–(iv), 61(i), 63–70, 71(i) and (iii)–(iv), and 72–77**

Defendants characterize the referenced paragraphs as enforcing subsection (43)(C), which the Court has found to be individually enforceable.

**Paragraphs 58, 60(v)–(vi), 61(ii), 62, 71(ii)**

Defendants characterize the referenced paragraphs as enforcing subsection (30)(A) and therefore invalid. Plaintiffs contend that these provisions generally implement subsection (43)(C) and therefore remain in effect.

Paragraph 58 states that Defendants and their contractors "shall require that utilization review and prior authorization decisions be made only by qualified personnel with education, training, or experience in child and adolescent health." The Court agrees that this provision presumes the individual enforceability of subsection (30)(A).

Paragraph 60 pertains to the development of a provider handbook specifying the state contractors' responsibilities relating to the provision of services to children in DCS custody. Parts (v) and (vi) specifically require the MCOs to demonstrate that their networks include "providers with cultural and linguistic competency, or access to translators, as may be needed for the effective treatment of children from ethnic minorities," and that each MCO demonstrate "a sufficient array of services and specialists" to meet the needs of the Plaintiff class-members. The Court finds that these provisions relate to "network sufficiency" and geographic availability of services under subsection (30)(A).

Paragraph 61(ii) requires Defendants to demonstrate "provider networks that comply" with the TennCare waiver. Defendants contend that this provision relates both to subsections (30)(A) and (43)(C). Plaintiffs contend that it enforces subsection (43)(C) and its implementing regulation only. The Court finds that it is premised upon subsection (30)(A)'s geographic-comparability requirement and as such is unenforceable under *John B.*

Paragraph 62 requires MCOs to provide primary care providers participating in the EPSDT program an up-to-date list of specialists to whom referrals can be made for screening, diagnostic and treatment services. The Court finds that this provision is focused on remedying and preventing further violations of subsection (43)(C).

Paragraph 71(ii) expressly requires Defendants and their contractors to ensure "a comprehensive and appropriate scope of geographically accessible" services and as such falls under *John B.*'s recognition that subsection (30)(A) is not privately enforceable.

**Paragraphs 78–83**

Defendants contend that the referenced paragraphs of the Consent Decree, which require coordination among Defendants and "other children's health and education services," are tethered only to the regulation enforcing subsection (43)(C), that is, 42 C.F.R. § 441.61(c), and not to the statute itself. Defendants further argue that regulations do not confer *rights*. Plaintiffs point out that the regulation explicitly implements § (43) and therefore has statutory foundation. They also argue that *Westside Mothers II* recognized the enforceability of consent decrees based on the implementing regulations. *See Westside Mothers II*, 454 F.3d at 543–44 (finding plaintiffs stated a claim under § 1983 for violations of subsection (43)(A) and its implementing regulation, 42 C.F.R. § 441.56(a)).

The Court finds that implementing language of 42 C.F.R. § 441.56(a) differs substantially from that in 42 C.F.R. § 441.61(c). The former regulation describes the steps agencies must take to comply with the requirements in subsection (43)(A) for providing notice to individuals of the availability of EPSDT programs, including the use of written and oral methods designed to inform them effectively, the use of clear and nontechnical language, methods for informing individuals with communication-related disabilities. Without going into detail, the Court would have no difficulty in concluding that these regulations are well within the scope of the implementing statute and confer readily enforceable rights upon individuals.

The latter regulation, however, states: "The agency must make appropriate use of State health agencies, State vocational rehabilitation agencies, and Title V grantees. . . . Further, the agency should make use of other public health, mental health, and education programs and related programs . . . to ensure an effective child health program." 42 C.F.R. § 441.61(c). This provision does not confer specific

rights upon individuals.  *Cf. Caswell v. City of Detroit Housing Comm'n*, 418 F.3d 615, 620 (6th Cir. 2005) ("Because [we cannot] point to a specific statutory provision . . . that confers a right relevant to [the defendant agency's] alleged violation of [the referenced regulation], [the plaintiff] cannot pursue his claim under § 1983.").  Even if it, did it is too vague to be individually enforceable, insofar as it refers to "appropriate use" without defining what is appropriate, and suggests (using precatory language) that the agency "should make use" of other public health programs without actually requiring that it do so.

Clearly, Defendants remain bound by the terms of 42 C.F.R. § 441.61, but it does not appear that Plaintiffs have the ability to enforce their compliance therewith under § 1983.  Because paragraphs 78–83 of the Consent Decree are admittedly reliant for their authority on "§ 1396a(a)(43)(C) through [the] implementing regulation 42 C.F.R. § 441.61(c)" (Pls.' Supp. Statement, Doc. No. 1454, at 2), they appear to be invalid.

**Paragraphs 84–93**

Paragraph 84 purports to require DCS to "ensure that the case planning and case review required under the relevant portions of the [AAA] for TennCare children in DCS custody who are subject to such Act shall identify and provide for the treatment of the behavioral health and medical needs of these children in accordance with [the AAA], as set out herein[.]"  The Court would be included to vacate this paragraph as entirely reliant upon the AAA which is not individually enforceable under § 1983.

Paragraphs 85–87 do not impose any substantive obligations on Defendants; they simply recognize that children in state custody have constitutional due-process rights.

Paragraphs 88–93, which fall under the heading "Formulation of Coordination Plan,"  do not refer or incorporate the AAA.  Rather, they impose an obligation on the state to monitor and review compliance with EPSDT for children in DCS custody and provides for the development of a remedial plan for compliance with EPSDT.  Plaintiffs contend and the Court agrees that these provisions serve to implement and enforce the State's EPSDT obligations to children in state custody under subsections (43)(B) and (C) and therefore remain valid.

**D.      Conclusion**

In sum, the Court reaches the preliminary conclusion that Paragraphs 43, 50, 58, 60, 61(ii), 71(ii), and 78–84 of the Consent Decree, in addition to paragraphs 45–49 and 61(iii), are subject to vacatur; the Court hereby signals its inclination to grant in part the Defendants' Motion to Vacate to reflect this finding. Pursuant to the parties' request, however, the Court's finding remains preliminary and does not constitute an appealable Order.  The Court defers entry of an Order at this time, pending further discussions among the parties, entry of a case management order, and substantial progress toward resolution of the dispositive issues in this case.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge