**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JOHN B., *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:98-cv-0168** |
| | ) | |
| **MARK EMKES, Commissioner, Tennessee Department of Finance and Administration, *et al.*,** | ) | **Judge Thomas A. Wiseman, Jr.** |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

In this class-action challenge to Tennessee's managed care program, TennCare, Plaintiffs allege that Defendants, Tennessee officials charged with implementing TennCare, failed to provide early and periodic screening, diagnosis and treatment ("EPSDT") services to Tennessee children (ages 21 and under) covered by TennCare, in violation of the Medicaid Act. Shortly after the lawsuit was filed in early 1998, the parties jointly filed a Consent Decree (ECF No. 12) ("Decree") under which they have been operating, and sporadically litigating, throughout the nearly fourteen years since its entry.

Presently pending before the Court are some portions of a Motion to Vacate the Consent Decree and Dismiss the Case, filed by Defendants in November 2006 (ECF No. 738). In that motion, Defendants pointed out that their consent to the entry of the Decree was expressly premised "upon the assumption that the EPSDT requirements of 42 U.S.C. §§ 1396a(a)(43) and 1396d(r), and 42 U.S.C. §§ 671(a)(16) and 675(1) and (5) of the Adoption Assistance Act are enforceable under 42 U.S.C. § 1983" (Decree ¶ 15). Next, Defendants argued that "recent controlling precedent" from the Sixth Circuit, specifically *Westside Mothers v. Olszewski*, 454 F.3d 532 (6th Cir. 2006) ("*Westside Mothers II*"), had established that the referenced statutory provisions were not, as a matter of law, individually enforceable through an action brought pursuant to 42 U.S.C. § 1983.

In September 2009, this Court (Haynes, J.) entered a Memorandum Opinion and Order denying Defendants' Motion to Vacate. Defendants immediately appealed that ruling. Several months later, in the midst of an interminable discovery dispute, Defendants moved the district court to stay all proceedings

pending the Sixth Circuit's resolution of their interlocutory appeal. The district court initially denied the motion, but the Sixth Circuit intervened and granted a stay effective February 19, 2010 (ECF No. 1406). On November 30, 2010, the Sixth Circuit entered an opinion vacating the Consent Decree in part and remanding the matter for further proceedings. *John B. v. Goetz*, 626 F.3d 356 (6th Cir. 2010).

More specifically, the Sixth Circuit rejected Defendants' argument that the Medicaid statute as a whole does not confer individual rights enforceable under 42 U.S.C. § 1983 but, in addressing Defendants' more particularized arguments aimed at "the primary statutory provision on which the consent decree and plaintiffs' claims are based," reconfirmed that 42 U.S.C. § 1396a(a)(30) is not privately enforceable under § 1983. *John B.*, 626 F.3d at 362, 363. Consequently, the court vacated "the consent decree's requirement that defendants ensure that the availability of services is geographically comparable and any other provisions based on § 1396a(a)(30)," *id.* at 363, without specifying exactly which other provisions of the consent decree might be based on § 1396a(a)(30). Likewise, the court expressly held that the Adoption Assistance Act ("AAA"), 42 U.S.C. §§ 671(a)(16), 675(1), and 675(5), does not create rights that are privately enforceable under § 1983, but declined to "ascertain the extent to which the decree is based on provisions of the [AAA]," *John B.*, 626 F.3d at 363, leaving that issue to be resolved in the first instance by the district court.

The appellate court also reaffirmed its implicit holding in *Westside Mothers v. Olszewski*, 454 F.3d 532, 542 (6th Cir. 2006) ("*Westside Mothers II*"), that 42 U.S.C. § 1396a(a)(43)(A) confers rights that are enforceable under § 1983, but declined to reach the question of the enforceability of the other subsections of 42 U.S.C. § 1396a(a)(43), namely subsections (B), (C), and (D). The court also declined to consider the scope of any rights that might be created by those provisions. In that regard, the court stated instead:

> One open question is the extent to which *Westside Mothers II*'s holding that a state's obligation under §§ 1396a(a)(8) and (10) is only to pay for medical assistance may be applicable to the provisions of § 1396a(a)(43) not addressed in Westside Mothers II. The answer to this question could potentially impact the provisions of the consent decree that require actual provision of service rather than simply payment. Another issue relates to whether *Westside Mothers II*'s determination about waiting lists is applicable to the waiting list provision of § 1396a(a)(43)(C). Finally, *Westside Mothers II* only addresses one part of § 1396a(a)(43) and leaves unresolved the private enforceability of the remaining part. While we could undertake an analysis of each of these issues, we believe that they are best left to the district court in the first instance . . . .

*John B.*, 626 F.3d at 363.

After remand and reassignment of the case to the undersigned, the parties submitted additional briefing on the issues the Sixth Circuit left unresolved, and arguing the question of what portions of the Decree are effectively vacated by the Sixth Circuit's ruling. In their brief, Defendants concede the private enforceability of § 1396a(a)(43)(B) (hereafter "subsection (43)(B)"), but argue pursuant to the Sixth Circuit's holding in *Westside Mothers II* that "there is no individual right [under subsection (43)(B)] to make the State itself ensure *provision* of such medical services (as opposed to *reimbursing* for them)." (Doc. No. 1428, at 18 (Defs.' Supp. Br. 14) (emphasis added).) With respect to 42 U.S.C. § 1396a(a)(43)(C) ("subsection (43)(C)"), Defendants argue that this statutory provision only requires the state to submit a plan for the arrangement of corrective treatment once such treatment has been identified as necessary, but that "the statute does not speak to the beneficiary; it simply does not say that the beneficiary has a *right* to treatment." (Doc. No. 1428, at 19.) Alternatively, Defendants concede that some courts have held that subsection (43)(C) is individually enforceable under § 1983 when the claim in question is brought by an individual who has been denied coverage for a specific treatment to address a specific medical condition, but they argue that where "the claims and the relief in question are systemwide and aggregate, a cause of action will not lie under Section 1983." (*Id.*) Defendants further contend that numerous provisions of the Consent Decree premised upon subsections (43)(B) and (C) must be vacated, along with numerous other provisions that are implicated by, and must be vacated as a result of, the Sixth Circuit's conclusion that § 1396a(a)(30) and the AAA do not create enforceable rights.

For their part, Plaintiffs concede that two subparagraphs of the Consent Decree are subject to being vacated as a result of the Sixth Circuit's decision, and that § 1396a(a)(43)(D) does not create privately enforceable rights. They deny that any of the remedies effected by the Consent Decree are implicated by subsection (43)(D), however, and argue that the remainder of the Decree is intended to remedy violations of subsections (43)(B) and (C), which are privately enforceable.

On March 1, 2010, this Court entered a Memorandum of Preliminary Findings, but, pursuant to the parties' request, deferred entry of an actual order that might have been immediately appealable. The parties requested deferral of entry of an order pending further discussions among the parties, entry of a case management order, and substantial progress toward resolution of the dispositive issues. The

parties have now made substantial progress toward resolution of the case, and the Court will enter this Memorandum Order disposing of the issues raised by the Sixth Circuit's remand prior to entering a ruling on Defendants' more recently filed motion to vacate the still-valid portions of the Consent Decree, in accordance with its own terms, based on Defendants' substantial compliance therewith.

As set forth herein, the Court finds that subsections (43)(B) and (C) are privately enforceable, and that their application is unaffected by the Sixth Circuit's holding in *Westside Mothers II*. The Court further finds that several paragraphs of the Consent Decree should be vacated as a result of the 6th Circuit's decision, but that the majority of the Consent Decree should remain in effect, as identified below.

## I. ANALYSIS AND DISCUSSION

### A. The Enforceability of Subsections (43)(B) and (C) under § 1983

Plaintiffs' claims are brought under 42 U.S.C. § 1983 against Defendants to enforce the early and periodic screening, diagnosis and treatment ("EPSDT") provisions of the Medicaid Act. The parties entered into a Consent Decree in March 1998 (Doc. No. 12) which imposes systemic remedies for these alleged violations. In their Rule 60(b) Motion to Vacate the Consent Decree and Dismiss the Case (Doc. No. 738), Defendants argue that the validity and enforceability of the Consent Decree are predicated on the presumption that individual subsections of the Medicaid Act are privately enforceable under § 1983. Section 1983, however, only authorizes a private right of action to the extent the specific provision of federal law sought to be enforced has "unambiguously conferred *rights*, as distinguished from mere benefits or interests." *Westside Mothers II*, 454 F.3d at 541–42 (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 282–83 (2002)) (emphasis added).

In inquiring whether an individually enforceable right exists, the Sixth Circuit looks to three factors: (1) whether Congress intended the provision to benefit the plaintiff; (2) whether the statute is so "'vague and amorphous' that its enforcement would strain judicial competence"; and (3) whether the provision imposes a binding obligation on the state, *i.e.*, it must be couched in mandatory, rather than precatory, terms. *Johnson v. City of Detroit*, 446 F.3d 614, 618–19 (6th Cir. 2006) (citing *Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997)). With respect to the first *Blessing* factor, the Supreme Court in *Gonzaga* expressly "reject[ed] the notion that . . . anything short of an unambiguously conferred right [is sufficient] to support a cause of action brought under § 1983," and emphasized that "it is *rights*, not the

broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that section." *Gonzaga*, 536 U.S. at 283) (emphasis in original).

The Sixth Circuit has already determined that subsection (A) of § 1396a(a)(43) is individually enforceable under § 1983. *See Westside Mothers II*, 454 F.3d at 543 (presuming the enforceability of § 1396a(a)(43(A) without discussion, and finding that the plaintiffs' complaint stated a claim under § 1983 for violation thereof); *John B. v. Goetz*, 626 F.3d at 362 (observing that the court in *Westside Mothers II* had permitted a claim for relief under § 1396a(a)(43)(A) to proceed). Subsection (43)(A) states:

> A State plan for medical assistance must . . . provide for . . .
>
> (A) informing all persons in the State who are under the age of 21 and who have been determined to be eligible for medical assistance including services described in section 1396d(a)(4)(B) of this title, of the availability of early and periodic screening, diagnostic, and treatment services as described in section 1396d(r) of this title and the need for age-appropriate immunizations against vaccine-preventable diseases[.]

42 U.S.C. § 1396a(a)(43)(A).

While subsection (A) requires the State to provide notice to individuals of the availability of EPSDT services, subsections (B) and (C) require the actual provision of those services to individuals who request them:

> (B) providing or arranging for the provision of such screening services in all cases where they are requested, [and]
>
> (C) arranging for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed by such child health screening services[.]

42 U.S.C. § 1396a(a)(43)(B)–(C).[1] Application of the *Blessing* test confirms that these subsections are likewise individually enforceable under § 1983.

Under *Gonzaga*, to satisfy the first *Blessing* factor, for a statute to "unambiguously" confer a right enforceable under § 1983 it must (1) contain rights-creating language that is unmistakably focused on the individuals benefitted; (2) have an individual focus, rather than a systemwide or aggregate focus; and (3) lack an enforcement scheme for aggrieved individuals. *Gonzaga*, 536 U.S. at 284–86. Subsections 43(B), and (C) easily satisfy these criteria to meet the first *Blessing* factor. First, they contain rights-

[1] As previously stated, the parties agree that subsection (D) is not privately enforceable. It requires the State to submit annual reports statistical information relating to the provision of EPSDT services.

creating language that focuses on specific individuals. *Cf. Harris v. Olszewski*, 442 F.3d 456, 462 (6th Cir. 2006) ("[B]y saying that '[a] State plan . . . must . . . provide' this free choice [among medical providers], the statute uses the kind of 'rights-creating,' 'mandatory language,' that the Supreme Court and our court have held establishes a private right of action." (citations omitted)). Subsection (43)(A) conforms to this requirement by identifying specific people—"all persons in the State who are under the age of 21 and who have been determined to be eligible for medical assistance"—and requiring that the State "provide for . . . informing [them] . . . of the availability of [EPSDT] services." 42 U.S.C. § 1396(a)(43)(A). Similarly, subsection (43)(B) requires the State to "provide for . . . providing or arranging for the provision of such screening services" to the same children referenced in subsection (A) "in all cases where they are requested." Subsection (43)(C) likewise requires the State to "provide for . . . arranging for . . . corrective treatment" for those children who receive screening services, if necessary. Second, subsections (43)(B) and (C) have "an individual focus, rather than a systemwide or aggregate focus." Again, just as subsection (43)(A) focuses on specific individuals—Medicaid-eligible children—and provides that they must receive specific information, subsections (43)(B) and (C) focus on smaller subsets of the children who are identified as the focus of subsection (43)(A): Subsection (43)(B) focuses on children who request screening services and provides that each individual who requests a screening is entitled to receive it, while (43)(C) focuses on children whose screening under (43)(B) reveals the need for corrective treatment and requires that each individual child who is found to need it receive the corrective treatment. And third, these provisions—like the rest of the Medicaid Act—have no independent enforcement mechanism. *Harris v. Olszewski*, 442 F.3d 456, 462 (6th Cir. 2006). Subsections (B) and (C) of § 1396a(43), like subsection (A), meet the first *Blessing* factor in that they express a clear statutory intent to benefit the individual Plaintiffs in this action.

With respect to the second *Blessing* fact, it is clear that subsections (43)(B) and (C) do not impose a "vague and amorphous" mandate upon the State. As the Sixth Circuit indicated in *Harris*, the relevant question is whether the "mandate itself" contains "the kind of vagueness that would push the limits of judicial enforcement." 442 F.3d at 456. In *Harris*, the court concluded that the mandate contained in 42 U.S.C. § 1396a(a)(23) that Medicaid plans give beneficiaries their choice of willing providers was not vague because whether a plan gave this choice or not "is likely to be readily apparent."

*Harris*, 442 F.3d at 456. Subsection (43)(A) contains a similarly straightforward and ascertainable mandate—to provide information about screening services to all Medicaid-eligible children. Subsections (43)(B) and (C) contain equally clear mandates: that the state provide requested screening services to all Medicaid-eligible children who request them, and that it arrange for corrective treatment when necessary. Further, as Plaintiffs argue, it is all too “readily apparent” when a child who has requested screening services has not received them or when a child who needs corrective treatment goes without. Such explicit grants of easily discernible rights, coupled with readily apparent violations, plainly satisfy the second *Blessing* factor. *Cf. Harris*, 442 F. 3d at 456; *see also Gean v. Hattaway*, 330 F.3d 758, 772–73 (6th Cir. 2003) (holding that § 1396a(a)(3) of the Medicaid Act—which requires a state to “grant[] an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness”—is privately enforceable because it “creates an obligation on the part of the State and is phrased in terms of benefitting Medicaid recipients”).

Finally, subsections (43)(B) and (C) satisfy the third *Blessing* factor by unambiguously imposing a binding obligation on the State. These provisions require that the State “provid[e] or arrang[e] for the provision of” screening services, § 1396a(a)(43)(B)” and “arrang[e] for . . . corrective treatment.” § 1396a(a)(43) (C). This language is mandatory, not precatory, and thus creates a binding obligation on States participating in Medicaid. *Harris*, 442 F.3d at 462.

As Plaintiffs point out, every court to have examined the issue since *Gonzaga* has likewise concluded that subsections (43)(B) and (C) confer privately enforceable rights. (*See* Doc. No. 1431, at 11 (collecting cases).) Defendants, in attempting to avoid this result, have tended to conflate the scope of the Consent Decree’s provision of *remedies* for violations of the Medicaid Act with the scope of the rights conferred by the statutory provisions at issue. The Sixth Circuit has rejected that line of reasoning:

> To the extent that defendants’ first argument for vacating the entire decree is based on an argument that the decree’s systemic remedies are not privately enforceable, this reasoning does not correctly appreciate the distinction between rights and remedies. To determine whether a statute is enforceable under § 1983, courts examine “whether Congress intended to create a federal right,” *Gonzaga*, 536 U.S. at 283, not the scope of the relief sought or granted. In other words, *remedies vindicating individual rights may be both systemic and nonsystemic; the form of relief says nothing about the nature of the right*.

*John B*, 626 F.3d at 363 n.3 (emphasis added).

**B. The Scope of the Rights Created by Subsections (43)(B) and (C)**

As noted above, the Sixth Circuit asked this Court to examine the scope of the rights created by subsections (43)(B) and (C), and specifically to consider whether the scope of those provisions was affected by its holding in *Westside Mothers II* that Sections 1396a(a)(8) and (10) require only payment for medical assistance." *John B.*, 626 F.3d at 363. Plaintiffs concede that the one paragraph of the Consent Decree that references waiting lists (Decree ¶ 61(iii)) must be vacated. Otherwise, this Court concludes that *Westside Mothers II*'s interpretation of Sections (a)(8) and (10) has no effect on the construction of Section (a)(43).

First, the holding in *Westside Mothers II*—that a state's obligations under § 1396a(a)(8) and (10) are limited to payment for services—turned entirely on the particular language of the statutory provisions at issue in that decision,[2] and specifically required the Sixth Circuit to construe the term "medical assistance" as it is defined by the Medicaid Act. The Sixth Circuit concluded that "medical assistance" as used in those specific provisions was defined elsewhere in the Medicaid Act to mean "payment of part or all of the cost of the [enumerated] services" to eligible individuals. *Westside Mothers II*, 454 F.3d at 540 (citing 42 U.S.C. § 1396d(a) (2006); *Schott v. Olszewski*, 401 F.3d 682, 686 (6th Cir. 2005)). The statutory provisions in question here, however, do not refer to medical assistance; instead they expressly require the state either to provide or arrange for the provision of screening and treatment services. The Court finds that *Westside Mothers II* has no bearing on the construction of subsections (43)(B) and (C).

Even if that were not the case, the term "medical assistance," at the time *Westside Mothers II* was decided, was still defined by the Medicaid Act to mean payment for services. Congress has recently clarified, however, that the term "medical assistance" means "payment of part of all of the costs of . . .

---

[2] The referenced provisions require state Medicaid plans to:

> (8) provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals; [and]
>
> (10) provide . . . for making medical assistance available [to eligible individuals] . . . .

42 U.S.C. § 1396a(a)(8) & (10).

care and services, or the care and services themselves, or both." 125 Stat. 119, at § 2304 (March 23, 2010) ("Patient Protection and Affordable Care Act" (amending Section 1905(A) of the Social Security Act as codified at 42 U.S.C. § 1396d(a)). Under this amendment, whether a particular provision of the Medicaid Act requires payment for services or the provision of the services themselves is not controlled by the old definition of "medical assistance" as referring only to financial assistance. Indeed, the legislative history behind this amendment clearly shows that Congress intended to clarify that where the Medicaid Act refers to the provision of services, a participating State is required to provide (or ensure the provision of) services, not merely to pay for them:

> ["Medical assistance"] is expressly defined to refer to payment but has generally been understood to refer to both the funds provided to pay for care and services and to the care and services themselves. . . . Some recent court opinions have, however, questioned the longstanding practice of using the term "medical assistance" to refer to both the payment for services and the provision of the services themselves. These opinions have read the term to refer only to payment; this reading makes some aspects of the rest of Title XIX difficult and, in at least one case, absurd. If the term meant only payments, the statutory requirement that medical assistance be furnished with reasonable promptness "to all eligible individuals" in a system in which virtually no beneficiaries receive direct payments from the state or federal governments would be nearly incomprehensible.

H.R. Rep. No. 299, 111th Cong., 1st Sess. 2009, at 645–50 (Oct. 14, 2009), also available at 2009 WL 3321420, at *694–*95.

The Sixth Circuit acknowledged in *John B.* that "[t]he definition of 'medical assistance' has changed" since *Westside Mothers II*, but stated that "the new definition does not affect" the holding of *Westside Mothers II* regarding the State's obligations under Sections (8) and (10) because "a state may still fulfill its Medicaid obligations by paying for services." *John B.*, 626 F.3d at 360 n.2. The Sixth Circuit was silent as to the effect of the definitional change on Section (43). This Court finds that where, as in § 1396a(a)(43)(B) and (C), the language of a provision clearly requires that the state "provide or arrange for the provision" of screening services and corrective treatment, that language cannot reasonably be construed to mean only payment for services, particularly in light of the amended definition of "medical assistance." Even if that were not the case, the holding in *Westside Mothers II* would affect only the scope of a state's obligations under subsections (43)(B) and (C)—it would not render them unenforceable through § 1983.

And, to be clear, these provisions do not require the State to become a "direct medical provider,"

as the State asserts. (Defs.' Supp. Brief, Doc. No. 1428, at 18.) Rather, these provisions require the State to ensure that Medicaid-eligible children receive "screening services" and "corrective treatment" under certain circumstances. To satisfy its obligations, the State may either provide services directly or hire others to do so.

**C. Assessment of Individual Paragraphs of the Decree for Enforceability under § 1983**

The next question that arises is this: What portions of the Consent Decree, if any, are subject to being vacated as a result of the Sixth Circuit's conclusion that 42 U.S.C. § 1396a(a)(30)(A) ("subsection (30)(A)") and the Adoption Assistance Act ("AAA") do not create rights enforceable through § 1983, and the Plaintiffs' concession that subsection (43)(D) is likewise not privately enforceable? And conversely, which portions of the Decree remain valid in light of the conclusion that 42 U.S.C. §§ 1396a(a)(43)(A) through (C) are privately enforceable?

In responding to these questions, Defendants challenge essentially every paragraph of the Consent Decree from paragraph 41 through paragraph 93 on the basis that each is based on subsection (43)(D), subsection (30)(A), or on the AAA. In Plaintiffs' view, virtually every paragraph of the Consent Decree is premised upon subsection (43)(A), (B) or (C) and is therefore valid and enforceable, except that Plaintiffs concede that paragraphs 45 through 49 may be vacated as outdated and therefore moot, and that paragraph 61(iii) may be vacated as dependent for its authority on subsection (30)(A). The parties' positions and the Court's resolution of the dispute as to each of the other challenged paragraphs are set forth below.

***(1) Paragraphs 41–42***

Paragraph 41 requires that the "TennCare rules and guidelines clearly describe, allocate responsibility for, and require compliance with, each specific screening requirement under federal law," which it then enumerates in detail. Paragraph 42 likewise requires that TennCare rules and regulations comply with federal law governing interperiodic screening. Defendants characterize paragraphs 41 and 42 as relating to "screening participation rates" and falling, as such, under the purview of subsection (43)(D), which is not individually enforceable. The Court agrees with Plaintiffs that these paragraphs are clearly intended to remedy and prevent violations of subsection (43)(B) and that they remain in full force and effect.

***(2) Paragraph 43***

Paragraph 43 requires that the TennCare contractor networks be "adequate in terms of qualifications and training, as well as in numbers, to properly screen children in conformity" with federal law. Defendants characterize paragraph 43 as implicating subsection (30)(A) and the "network adequacy" requirement, while Plaintiffs again contend that the provision is meant to enforce and remedy subsection (43)(B) and its implementing regulation, 42 C.F.R. § 441.61(b). The Court finds that the provision itself is somewhat vague and that compliance would be difficult to prove. Essentially, Defendants' obligation in proving compliance with the Decree and subsection (43)(B) and (C) will be to show that it is effectively screening all children who request it and treating those whose screens reveal a need for treatment, and the State contractors will necessarily have to have in effect adequate networks to ensure Defendants' compliance. The Court nonetheless finds that this paragraph of the Decree too heavily reliant on subsection (30)(A), and too amorphous and unwieldy on its own to monitor or enforce.

***(3) Paragraph 44***

Paragraph 44 sets out the steps the State is to take to ensure that periodic screens effectively identify children who should be referred for further assessment of behavioral/developmental problems or possible hearing or vision impairment. Defendants characterize paragraph 44 as "enforcing the participation goal established by CMS pursuant to [subsection (43)(D)]. The Court finds that this paragraph implicates subsections (43)(B) and (C) and is intended to remedy past violations of those provisions and prevent ongoing or future violations thereof. In that regard, and as a general matter with respect to Defendants' continued objection to various portions of the Decree as systemic in scope, the Court again notes the critical distinction between *rights* conferred by the relevant statutory provisions, and *remedies* provided in the Decree for violations thereof. "*[R]emedies vindicating individual rights may be both systemic and nonsystemic; the form of relief says nothing about the nature of the right.*" *John B.*, 626 F.3d at 363 n.3 (emphasis added).

***(4) Paragraphs 45–52***

Plaintiffs conceded that paragraphs 45–49, to the extent they require the State to meet certain screening percentages within specific time frames, are out of date and may be vacated as moot. (ECF 1454, at 1 n.1.) This concession appears to be in part the result of an oversight by Plaintiffs. While

paragraphs 45, 48, 49, and 50 (Plaintiffs did not expressly concede the mootness of paragraph 50) are clearly moot, as they pertain only to dates long-since past, paragraphs 46 and 47 appear to have continued relevance.

The first part of paragraph 46 has expired: It requires determination of a baseline periodic screening ratio for fiscal year 1996 and defines the method for calculation a baseline periodic screening percentage. The remainder of the paragraph, however, appears to pertain to the calculation of screening percentages in future years and therefore remains relevant. For instance, paragraph 46 states that "[s]ubsequent periodic screening percentages will be calculated using methodology identical to that used in calculation of the baseline periodic screening percentage." (Decree ¶ 46.) It further provides for "annual statistically valid medical record review of a sample of encounters coded as periodic screens" to verify whether the screens meet federal criteria, and to produce an "adjusted periodic screening percentage (APSP)," which likewise remains relevant to the determination of whether Defendants are in compliance with the Decree as a whole. Paragraph 47 requires TennCare to require the MCOs to comply with the terms of the Decree in reporting EPSDT screens; this provision also appears to remain relevant.

The question still remains as to whether these provisions are enforceable after *Westlaw Mothers II* and *John B. v. Goetz*. Defendants argue these provisions are concerned with "overall methodology rather than conferring individually enforceable rights on individual Medicaid recipients" (ECF 1428, at 15 (citing *Westside Mothers II*, 454 F.3d at 543)), and that they focus "upon the state as the person regulated rather than the individuals protected" (*id.* (citing *Westside Mothers II*, 454 F.3d at 542)). The Court agrees that these provisions themselves, if they were statutes, would not be individually enforceable under § 1983 under *Blessing* and *Gonzaga*. The Court construes these provisions, however, as providing a systemic *remedy* for the State's past violations of federal EPSDT requirements, and further finds that these are the very provisions pursuant to which the State agreed that its compliance with the Consent Decree as a whole would be measured. In other words, they provide a means for measuring the State's performance of its federal obligations.

Likewise, paragraph 51 confirms that the Defendants will be presumed to be in compliance with their screening obligations under the law and the Decree for any year in which the 80% goal is met. Paragraph 51 shall remain in effect as indication of the parties' intent that the State's ability to meet the

statutory goal (which remains in effect regardless of Plaintiffs' standing to enforce it) shall be evidence of the State's compliance with the Decree and federal law.

Paragraph 52 requires the complete screening of 100% of TennCare children in the custody of the Department of Children's Services, and sets forth DCS's responsibilities with regard to developing a tracking system for reporting compliance with this provision. Defendants assert that this provision also relates to subsection (43)(D). Plaintiffs assert that this provision reflects the State's responsibility acting *in loco parentis* and as a Medicaid provider to ensure that all children in its custody receive EPSDT screens.

The Court agrees that Defendants, as a practical matter, have complete control over whether children in State custody request and receive screenings, and in fact would have an obligation to act *in loco parentis* to ensure that screens are requested on behalf of these children. The provision also reflects recognition of the fact that the State was not previously in compliance with its obligations under subsection (43)(B) and attempts to remedy that problem, and as such remains valid and enforceable.

***(5) Paragraphs 53–57, 59, 60(i)–(iv), 61(i), 63–70, 71(i) and (iii)–(iv), and 72–77***

Defendants characterize the referenced paragraphs as enforcing subsection (43)(C) (*see* ECF No. 1428, at 9), which the Court has found to be individually enforceable. The Court notes, however, that paragraphs 72 and 73 pertain to actions the State was to have taken within days of entry of the Decree and are therefore mooted by time, there being no contention by the Plaintiffs that the Defendants failed to take the actions mandated by those provisions.

***(6) Paragraphs 58, 60(v)–(vi), 61(ii)–(iii), 62, 71(ii)***

Defendants characterize the referenced paragraphs as enforcing subsection (30)(A) and therefore invalid. Plaintiffs contend that these provisions generally implement subsection (43)(C) and therefore remain in effect.

Paragraph 58 states that Defendants and their contractors "shall require that utilization review and prior authorization decisions be made only by qualified personnel with education, training, or experience in child and adolescent health." The Court agrees that this provision presumes the individual enforceability of subsection (30)(A).

Paragraph 60 pertains to the development of a provider handbook specifying the state

contractors' responsibilities relating to the provision of services to children in DCS custody. Parts (v) and (vi) specifically require the MCOs to demonstrate that their networks include "providers with cultural and linguistic competency, or access to translators, as may be needed for the effective treatment of children from ethnic minorities," and that each MCO demonstrate "a sufficient array of services and specialists" to meet the needs of the Plaintiff class-members. The Court finds that these provisions relate to "network sufficiency" and geographic availability of services under subsection (30)(A).

Paragraph 61(ii) requires Defendants to demonstrate "provider networks that comply" with the TennCare waiver. Defendants contend that this provision relates both to subsections (30)(A) and (43)(C). Plaintiffs contend that it enforces subsection (43)(C) and its implementing regulation only. The Court finds that it is premised upon subsection (30)(A)'s geographic-comparability requirement and as such is unenforceable under *John B.*

Paragraph 61(iii) explicitly cross-references subsection (30)(A) and is unenforceable.

Paragraph 62 requires MCOs to provide primary care providers participating in the EPSDT program an up-to-date list of specialists to whom referrals can be made for screening, diagnostic and treatment services. The Court finds that this provision is focused on remedying and preventing further violations of subsection (43)(C) and as such remains in force.

Paragraph 71(ii) expressly requires Defendants and their contractors to ensure "a comprehensive and appropriate scope of geographically accessible" services and as such falls under *John B.*'s recognition that subsection (30)(A) is not privately enforceable.

***(7) Paragraphs 78–83***

Defendants contend that the referenced paragraphs of the Consent Decree, which require coordination among Defendants and "other children's health and education services," are tethered only to the regulation enforcing subsection (43)(C), that is, 42 C.F.R. § 441.61(c), and not to the statute itself. Defendants further argue that regulations do not confer *rights*. Plaintiffs point out that the regulation explicitly implements subsection (43) and therefore has statutory foundation. They also argue that *Westside Mothers II* recognized the enforceability of consent decrees based on the implementing regulations. *See Westside Mothers II*, 454 F.3d at 543–44 (finding plaintiffs stated a claim under § 1983 for violations of subsection (43)(A) and its implementing regulation, 42 C.F.R. § 441.56(a)).

The Court finds that implementing language of 42 C.F.R. § 441.56(a) differs substantially from that in 42 C.F.R. § 441.61(c). The former describes the steps agencies must take to comply with the requirements in subsection (43)(A) for providing notice to individuals of the availability of EPSDT programs, including the use of written and oral methods designed to inform them effectively, the use of clear and non-technical language, methods for informing individuals with communication-related disabilities. Without going into detail, the Court has no difficulty in concluding that these regulations are well within the scope of the implementing statute and confer readily enforceable rights upon individuals.

However, the latter regulation, 42 C.F.R. § 441.61(c), states: "The agency must make appropriate use of State health agencies, State vocational rehabilitation agencies, and Title V grantees. . . . Further, the agency should make use of other public health, mental health, and education programs and related programs . . . to ensure an effective child health program." 42 C.F.R. § 441.61(c). This provision does not confer specific rights upon individuals. *Cf. Caswell v. City of Detroit Housing Comm'n*, 418 F.3d 615, 620 (6th Cir. 2005) ("Because [we cannot] point to a specific statutory provision . . . that confers a right relevant to [the defendant agency's] alleged violation of [the referenced regulation], [the plaintiff] cannot pursue his claim under § 1983."). Even if it did, it is too vague to be individually enforceable, insofar as it refers to "appropriate use" without defining what is appropriate, and suggests (using precatory language) that the agency "should make use" of other public health programs without actually requiring that it do so.

Clearly, Defendants remain legally bound by the terms of 42 C.F.R. § 441.61, but Plaintiffs do not have the ability to enforce Defendants' compliance therewith under § 1983. Because paragraphs 78–83 of the Consent Decree are admittedly reliant for their authority on "§ 1396a(a)(43)(C) through [the] implementing regulation 42 C.F.R. § 441.61(c)" (Pls.' Supp. Statement, Doc. No. 1454, at 2), they appear to be invalid.

***(8) Paragraph 84***

Paragraph 84 purports to require DCS to "ensure that the case planning and case review required under the relevant portions of the [AAA] for TennCare children in DCS custody who are subject to such Act shall identify and provide for the treatment of the behavioral health and medical needs of these children in accordance with [the AAA], as set out herein[.]" This paragraph is entirely reliant upon the

AAA which is not individually enforceable under § 1983.

***(9) Paragraphs 85–87***

Paragraphs 85–87 do not impose any substantive obligations on Defendants; they simply recognize that children in state custody have constitutional due-process rights.

***(10) Paragraphs 88–93***

Paragraphs 88–93, which fall under the heading "Formulation of Coordination Plan," do not reference or incorporate the AAA. Rather, they impose an obligation on the state to monitor and review compliance with EPSDT for children in DCS custody and provide for the development of a remedial plan for compliance with EPSDT. Plaintiffs contend and the Court agrees that these provisions serve to implement and enforce the State's EPSDT obligations to children in state custody under subsections (43)(B) and (C) and therefore remain valid.

***(11) Remaining Paragraphs***

The majority of the remaining paragraphs of the Decree pertain to actions the State was required to take within 30 to 180 days after entry of the Decree. (Decree ¶¶ 94–96, 99, 101–03, 105, 107.) Other provisions require that Defendants file semiannual reports regarding their compliance with the terms of the Decree, that the parties meet at least on a quarterly basis to monitor the implementation of the Decree, and that Defendants pay Plaintiffs' attorneys' fees and costs incurred through the date of entry of the Decree. There is no contention that Defendants have failed in these obligations. Other provisions incorporate a reservation of rights, notice to class members, and a provision for the expiration of the Decree upon proof that Defendants have reached an adjusted periodic screening percentage and dental screening percentage of 80% and are otherwise in substantial compliance with the terms of the Decree. The parties do not dispute the enforceability of these remaining paragraphs.

## II. CONCLUSION AND ORDER

In sum, the Court finds that 42 U.S.C. § 1396a(a)(43)(B) and (C), along with subparagraph (A), create rights that are individually enforceable under 42 U.S.C. § 1983, and that the scope of those rights is not affected by the Sixth Circuit's holding in *Westside Mothers II* or *John B. v. Goetz*. Based on those conclusions, the Court further finds that the paragraphs of the Consent Decree that rely upon the presumption that subparagraphs (A) through (C) create individually enforceable rights are themselves

enforceable as a matter of law. The Court finds that the following paragraphs of the Consent Decree, whose vacatur Defendants seek, are premised upon subsections (A), (B) or (C): Paragraphs 41, 42, 44, 46–47, 51–57, 59, 60(i)–(iv), 61(i), 63–70, 71(i), 74–77, and 88–93.

The motion to vacate the Consent Decree (ECF No. 738) is therefore **DENIED IN PART**, and specifically denied as to those provisions.

The Court further finds that paragraphs 45, 48–50, 72, and 73 have been mooted by the passage of time, and that paragraphs 85–87 do not purport to create any rights enforceable under the Consent Decree.

Finally, the Court finds that paragraphs 43, 58, 60(v)–(vi), 61(ii)–(iii), 62, 71(ii), and 78–84 are reliant upon statutory or regulatory provisions that do not create individually enforceable rights and are therefore subject to vacatur. The motion to vacate the Consent Decree is hereby **GRANTED IN PART** as to those provisions.

It is so **ORDERED**.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge